**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SINA MORRIS, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiffs, | **COMPLAINT**<br>**CLASS ACTION** |
| v. | **JURY TRIAL DEMANDED** |
| EQT CORPORATION, a Pennsylvania Corporation, EQT PRODUCTION COMPANY, a Pennsylvania corporation, and BOP ACQUISITION, LLC, a Pennsylvania limited liability company. | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff Sina Morris, on behalf of herself and all others similarly situated, brings this action against Defendants EQT Corporation, EQT Production Company (together, "EQT"), and BOP Acquisition LLC (collectively, "Defendants"), and in support thereof alleges as follows.

### I.    NATURE OF THE ACTION

1.    Defendants have engaged in a widespread scheme to acquire oil and gas rights from mineral interest owners while concealing that EQT already owed those owners proceeds from production of those same mineral interests—essentially extinguishing EQT's obligation to pay those owners their fair share of proceeds, and deceiving property owners into accepting purchase of their property with their own money.

2.     Defendants conspired to profit from the breach of EQT's duties as the operator of mineral interest properties by, without limitation, attempting to: (1) extinguish EQT's obligations to pay lessors and unleased cotenants their full respective share of oil and gas production revenue; (2) acquire valuable mineral interest properties at an unlawful discount by concealing and misappropriating the proceeds owed to mineral interest owners; and (3) utilize the withheld proceeds to obtain an unlawful and illegal market advantage over other mineral interest purchasers.

## II.    PARTIES

3.     Plaintiff Sina Morris ("Plaintiff" or "Plaintiff Morris") is, and at all material times mentioned herein was, an adult individual residing in Marshall County, West Virginia.

4.     Defendant EQT Corporation ("EQT Corp.") is a Pennsylvania corporation regularly doing business in Pennsylvania, with its place of business located at 625 Liberty Avenue, Pittsburgh, Pennsylvania 15222. EQT Corp. is and was, at all material times herein, engaged in the business of purchasing, selling, and developing oil, gas, and hydrocarbon interests.

5.     Defendant EQT Production Company ("EQT Production") is a Pennsylvania corporation regularly doing business in Pennsylvania, with its principal place of business located at 625 Liberty Avenue, Pittsburgh, Pennsylvania 15222. EQT Production is and was, at all material times herein, engaged in the business of purchasing, selling, and developing oil, gas, and hydrocarbon interests.

6.     EQT Production is a wholly owned subsidiary of EQT Corp. Upon information and belief, EQT Corp. and EQT Production are closely interrelated business entities which share office space, corporate office holders and/or board members, and business interests.

7.      Upon information and belief, at all material times hereto, Defendants EQT Corp. and EQT Production were the agent, employee, partner, co-venturer, and/or co-conspirator of each of the other Defendants, and, in doing the acts herein alleged, were acting within the course and scope of such agency, employment, partnership venture and/or conspiracy, each with the permission, consent and/or ratification of the other Defendants.

8.      EQT Corp. and EQT Production are hereinafter collectively referred to as "EQT."

9.      Defendant BOP Acquisition, LLC ("BOP") is a Pennsylvania limited liability company with its principal place of business in Pittsburgh, Pennsylvania.  BOP is and was, at all material times herein, engaged in the business of acquiring oil, gas, and hydrocarbon interests acting on behalf of and as agent for EQT.

10.     Upon information and belief, at all material times hereto, Defendants conducted business in the Commonwealth of Pennsylvania, acting in their individual corporate capacities as well as by and through their unincorporated divisions and departments, their corporate parents, subsidiaries and/or other affiliates, their alter ego corporations and other entities, their predecessors and/or its successors.

### III.    JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action under 28 U.S.C. § 1332(d) of the Class Action Fairness Act because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, there are at least one hundred (100) members of the proposed Class, and at least one member of the proposed Class is a citizen of a different state from one of the Defendants.

12.     Alternatively, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because Plaintiff Morris is of diverse citizenship from Defendants, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

13.     This Court has personal jurisdiction over Defendants because Defendants are incorporated under the laws of Pennsylvania, Defendants' principal place of business is in this District, Defendants regularly conduct business in this District, and/or the transactions, events, acts, and/or omissions that form the basis of this Complaint occurred in this District.

14.     Venue is proper in the Western District of Pennsylvania because a substantial part of the acts giving rise to Plaintiff's and the Class Members' claims occurred in the District, and Defendants' principal places of business are located in this District.

### IV.    FACTUAL ALLEGATIONS

15.     EQT is an oil and gas production company with operations focused in the Appalachian Basin. EQT's business involves the production, sale, and acquisition of oil, gas, and other hydrocarbon interests.

16.     BOP provides land services to EQT, and serves as EQT's agent, without limitation, in the leasing and acquisition of mineral interests.

17.     Plaintiff and Class Members own mineral interests in oil, gas, and hydrocarbons in Pennsylvania, West Virginia, and Ohio.

**A. Defendants Engage in a Scheme to Purchase Mineral Interests Using Money Already Owed to Mineral Interest Owners.**

18.     EQT operates oil and gas wells and profits from the production of valuable natural gas and other hydrocarbon products from property owners throughout Pennsylvania, West Virginia, and Ohio.

19.     EQT's operations include the production of minerals from properties of lessors and unleased cotenants—individuals who own mineral interests that are not subject to an oil and gas lease.

20.     Generally, a tenant-in-common has a duty to account to the cotenant for their proportional share of the proceeds of mineral production from their commonly owned property.

21.     When an operator such as EQT produces oil or gas from the property of a nonconsenting or unleased cotenant, the operator must preserve and remit to the unleased cotenant the value of his or her share of the mineral production.

22.     Similarly, when an operator such as EQT produces oil or gas from the property of a party who has granted the operator the right to explore for and produce mineral interests, the operator has a contractual duty to preserve and remit to the lessor the value of the lessor's share of the mineral production.

23.     EQT, upon information and belief, maintains and/or holds funds belonging to lessors and unleased cotenants for oil and/or gas that EQT has extracted and sold from their property.

24.     EQT, upon information and belief, also maintains records of the amount of proceeds[1] owed to each respective lessor and unleased cotenant based upon their respective property interests.

25.     Rather than properly account to its cotenants, EQT implemented a scheme with BOP to purchase the mineral interests from the same cotenants without disclosing EQT's ongoing production, and thereby conceal EQT's obligation to pay cotenants for the proceeds owed to them by law.  In other words, EQT acquires mineral interests from property owners by paying them with their own money.

---

[1] For purposes of this Complaint, "proceeds" shall refer to all monies owed by EQT to Plaintiff and Class Members from oil, gas, and/or hydrocarbon production irrespective of whether Plaintiff and Class Members were unleased cotenants or parties to any lease agreement.

26.     EQT conspired with its land acquisition agent, Defendant BOP, to solicit the acquisition of mineral interests from individuals whom Defendants knew were already owed proceeds from oil and/or gas extraction.

27.     Defendants EQT and BOP have collaborated in soliciting the acquisition of mineral interests from property owners, and misrepresenting the amount of effective consideration prospective sellers would receive for the sale of their valuable mineral interests.

28.     Rather than disclose and distribute the proceeds owed to Plaintiff and Class Members, EQT sought to purchase the oil and gas rights of Plaintiff and Class Members, and simultaneously conceal and/or extinguish the existence of EQT's obligation to remit proceeds already owed to them.

**B.  Plaintiff Sina Morris**

29.     Plaintiff Morris is the owner of a fractional mineral interest in approximately 59.6875 acres in Springhill Township, Greene County, Pennsylvania, designated as tax parcel number 23-04-0111, as well as a fractional mineral interest in a contiguous parcel containing approximately twenty (20) acres, designated as tax parcel number 23-04-0106 (collectively the "Morris Property").

30.     The Morris Property is situated adjacent to the Franklin Denny GRE Well Pad designated by the Pennsylvania Department of Environmental Protection (hereinafter "PA DEP") as Well Pad ID No. 152251 (the "Franklin Denny Pad").

31.     Defendant EQT Production is the listed operator of the Franklin Denny Pad per the PA DEP's public records.

32.    The PA DEP's public production records reflect that the Franklin Denny Pad contains several unconventional, or horizontal, wells directly underlying or closely situated to the Morris Property, including a well identified by the PA DEP as "Franklin Denny 5H."

33.    Pursuant to 25 Pa. Code § 78a.121, EQT and other unconventional well operators must submit to the PA DEP a "monthly production and status report for each individual well on an individual basis[.]"

34.    Per the PA DEP's production records, the Franklin Denny 5H well was spudded on or about January 9, 2020 and has been producing natural gas since approximately August of 2021.

35.    EQT's Franklin Denny 5H well directly transects the Morris Property and, therefore, has operated to extract the finite natural gas owned by Plaintiff Morris.

36.    Plaintiff Morris did not execute any lease with Defendants or any third party for the extraction of oil and gas at the Morris Property.

37.    From the time that EQT commenced oil and gas production on the Morris Property, Plaintiff Morris, as a nonconsenting or unleased cotenant, was an equitable owner of the proceeds of the oil and gas development, which triggered a duty upon EQT to preserve, properly calculate, and distribute the proceeds owed to her.

38.    EQT has extracted and sold and continues to extract and sell natural gas from the Morris Property, yet EQT has never paid Plaintiff Morris for the share of proceeds owed to her as an unleased cotenant.

39.    In or about January 2024, Defendants mailed Plaintiff Morris an unsolicited offer to purchase the Morris Property. The solicitation letter did not disclose that EQT had already produced natural gas from the Morris Property and owed Plaintiff Morris for her share of production of her mineral interests.

40.     The solicitation letter that was directed to Plaintiff Morris and marked with EQT letterhead originated from an employee and/or agent of Defendant BOP, Max Nemeth, whose signature contained the job title description "Purchasing Agent w/ EQT." A true and correct copy of this solicitation letter is filed herewith as **Exhibit 1**.

41.     Between in or about January and June of 2024, Defendants contacted Plaintiff Morris by phone to discuss the solicitation offer, continued to make misrepresentations, and concealed material information regarding her mineral interests, including without limitation, concealing that EQT was already receiving proceeds from their sale of Plaintiff Morris's minerals and owed her a share of the proceeds from production.

42.     Defendants' solicitation letter was enclosed with two boilerplate hydrocarbon sales agreements which further excluded the fact that EQT was receiving proceeds from the production of the Morris Property and owed her a share of the proceeds from production. A true and correct copy of the hydrocarbon sale agreements for each parcel comprising the Morris Property, tax parcel number 23-04-0111 and tax parcel number 23-04-0106, are filed respectively herewith as **Exhibit 2** and **Exhibit 3**.

43.     Based upon Defendants' solicitations, misrepresentations, and fraudulent concealment, on or about June 10, 2024, Defendants EQT and BOP conspired and successfully solicited Plaintiff Morris's execution of two general warranty deeds for each parcel comprising the Morris Property, recorded at Deed Book 576, page 1216 and Deed Book 576, page 1230 in the Greene County Recorder of Deeds (the "Morris Deeds").

44.    Per the PA DEP's production records[2], within the thirty-three (33) months between August 2021 and May 2024—representing the months between EQT's commencing natural gas production on the Franklin Denny 5H well and the month prior to the execution of the Morris Deeds – EQT reported a sum production of 6,168,654 MCF (thousand cubic feet) attributed to the Franklin Denny 5H well.

45.    Upon information and belief, Plaintiff Morris's share of the proceeds of the Franklin Denny 5H well's natural gas production for the thirty-three months prior to the execution of the Morris Deeds exceeded one hundred thousand dollars ($100,000), yet, in soliciting the sale of the Morris Property, Defendants never disclosed to Plaintiff the material facts that EQT had been extracting natural gas from the Morris Property or that Plaintiff was owed her respective share of EQT's production of the Franklin Denny wells.

46.    Due to the Defendants' misrepresentations, omissions, and/or fraudulent concealment, Defendants solicited Plaintiff's execution of the Morris Deeds for the total consideration[3] of $20,104.03, amounting to a fraction of what EQT already owed Plaintiff for the extraction of her finite natural gas interests.

47.    Prior to the execution of the Morris Deeds, upon information and belief, EQT knowingly and intentionally concealed and/or failed to disclose the existence of proceeds owed to Plaintiff Morris, and failed to pay the proceeds independent of, and in addition to any consideration for the sale of her interest.

---

[2] *See* Oil and Gas Well Production, Operator: "EQT Prod Co" (OGO-39307); Permit Number: "059-27932", accessible at: https://greenport.pa.gov/ReportExtracts/OG/OilGasWellProdReport.

[3] The consideration paid for Plaintiff Morris's interests in Greene County, Pennsylvania Tax Parcel Numbers 23-04-0106 and 23-04-0111 was respectively $5,714.29 and $14,390.01 as recorded in Deed Book 576, page 1216 and Deed Book 576, page 1230 in the Greene County Recorder of Deeds.

**C. Defendants Have Engaged in a Pattern of Fraud Against Numerous Victims.**

48.     Defendants, upon information and belief, have engaged in a consistent and ongoing pattern of fraudulent conduct in acquiring mineral interests from owners while concealing the existence of production revenue already owed to them, and failing to pay such production revenue while soliciting the sale of their mineral interests, spanning years and damaging multiple victims.

49.     Defendants sent solicitation packets to at least three other mineral interest owners in substantially the same form as the packet sent to Plaintiff. Upon information and belief, Defendants' solicitation packet is based on a boilerplate form sent to numerous landowners throughout Pennsylvania, West Virginia, and Ohio. Upon information and belief, Defendants continue to send the solicitation packet to mineral interest owners and continue to defraud multiple victims as described herein depriving them of their property interests.

50.     Defendants' conduct has violated fundamental social duties imposed by law, by soliciting the acquisition of Plaintiff's and the proposed Class Members' mineral interests in tandem with the following acts and omissions, without limitation:

a.  Knowingly failing to disclose that Defendants had extracted hydrocarbons from the Plaintiff and Class Members' respective property interests;

b.  Knowingly failing to disclose that Defendants had sold hydrocarbons from the Plaintiff and Class Members' respective property interests;

c.  Knowingly failing to disclose that Defendants were in possession of hydrocarbon revenue proceeds owed to Plaintiff and Class Members;

d.  Knowingly soliciting mineral interest purchases while misrepresenting the actual consideration to be exchanged by virtue of Defendants' nondisclosure of revenue proceeds owed to Plaintiff and Class Members;

10

    e.   Knowingly failing to account to Plaintiff and Class Members for their respective share of revenue proceeds owed to them;

    f.   Knowingly failing to disclose and/or concealing information which Defendants knew would materially alter the counterparty Plaintiff and Class Members' understanding of the transaction to exchange mineral interests;

    g.   Attempting to acquire property interests at a discount through the foregoing misrepresentations and nondisclosure of revenue proceeds owed to Plaintiff and Class Members;

    h.   Prohibiting Plaintiff and the Class Members from successfully effectuating the sale of their respective properties with alternative purchasers on superior terms as Defendants knew that their offered purchase price incorporated the wrongfully withheld and/or undisclosed proceeds; and

    i.   Abusing duties of care ascribed to parties who hold funds on behalf of and/or owed to another.

## V.    CLASS ACTION STATEMENT

51.   ***Class Definition***. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this class action on behalf of the following Class:

    a.   All persons who owned mineral interests in oil, gas, and/or hydrocarbons, and sold their mineral interests to EQT, any affiliate of EQT or any party acting on behalf of EQT without EQT, or any party acting on behalf of EQT, without disclosing that it held, possessed or had control over funds owed to these persons for the production of their minerals prior to such sale.

52.     Excluded from the Class are (i) governmental entities, (ii) Defendants and their officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, assigns, and entities in which Defendants have a controlling interest, and (iii) the judge, justices, magistrates, or judicial officers presiding over this matter.

53.     Plaintiff reserves the right to modify, change, re-define, or expand the definitions of the Class as warranted by discovery and further investigation.

54.     This action is properly maintained as a class action because Defendants have acted or refused to act on grounds that are generally applicable to the proposed Class, so that final injunctive relief and/or declaratory relief is appropriate with respect to the members of the proposed Class as a whole.

55.     In addition, the Class satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of Rule 23(b)(3).  Further, the Class is ascertainable, as inclusion in the Class can be determined through EQT and/or BOP's own business records.

56.     ***Numerosity.***  The Class is so numerous that separate joinder of each member is impracticable.  Although, the precise number of Class Members is unknown and can only be determined through appropriate discovery, upon information and belief, there are at least one hundred (100) Class members, so that joinder of all members would be impracticable.

57.     ***Commonality.*** Questions of law and fact common to the Class Members exist that predominate over questions affecting only individual members, including without limitation:

> a.  Whether Defendants have engaged in a common scheme, plan and course of conduct to prevent Plaintiff and Class Members from receiving the proceeds owed to them for the production of their oil, gas, and/or hydrocarbons;

b.  Whether EQT failed to properly account to Plaintiff and Class Members for their respective share of the proceeds owed to them for the production of their oil, gas, and/or hydrocarbons;

c.  Whether Defendants employed unlawful, fraudulent, and/or deceptive tactics in soliciting the execution of mineral interests from individuals which Defendants knew were owed proceeds;

d.  Whether Defendants have engaged in a civil conspiracy injuring Plaintiff and the Class;

e.  Whether Defendants were unjustly enriched;

f.  Whether Plaintiff and Class Members have suffered damage as a result of Defendants' conduct; and

g.  The proper measure of damages.

58.    ***Typicality.*** Plaintiff's claims are typical of those brought on behalf of the members of the Class. Plaintiff Morris, like all Class members, were owed funds from EQT's production of their mineral interests and suffered damages as a result of Defendants' conduct.

59.    ***Adequacy of Representation.*** Plaintiff will fully and adequately represent and protect the interest of the Class because the common injuries and interests of the members of the Class and the singular conduct of Defendants is or was applicable to all members of the Class. Plaintiff has no interests that are contrary or in conflict with those of the Class that she seeks to represent.

60.    Plaintiff has retained counsel who are competent and experienced in the prosecution of class action suits and oil and gas litigation.

61.     **_Superiority_:** Certification of the Class is appropriate pursuant to Fed. R. C. P. 23(b)(3) because questions of law or fact common to the respective members of the Class predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims including consistency of adjudications. Absent a class action, it would be unlikely that many members of the Class would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed the expected recovery.

62.     A class action is a superior method for the adjudication of the controversy in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense, and the burden of the courts that individual actions would create.

63.     In the alternative, the Class should be certified because:

a.   The prosecution of separate actions by the individual members of the proposed class would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Defendants.

b.   The prosecution of individual actions could result in adjudications, which as a practical matter, would be dispositive of the interests of non-party class members or which would substantially impair their ability to protect their interests.

c.   Defendants have acted or refused to act on grounds generally applicable to the proposed Class, thereby making final and injunctive relief appropriate with respect to the members of the proposed Class as a whole.

## COUNT I
## ACCOUNTING

64.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

65.     As the operator of the mineral interests of the Plaintiff and the Class Members, EQT was obligated by law to maintain accurate and complete records as to the amount of oil and/or gas production, the revenue obtained by the oil and/or gas produced, the allocation of the proceeds of oil and gas produced relative to each lessor and/or cotenant, and any transactions, deductions, and/or adjustments affecting the proceeds to be distributed to Plaintiff and the Class Members.

66.     Plaintiff and the Class Members' action for accounting is proper given that the necessary information concerning the Plaintiff and Class Members' damages are wholly or substantially within the possession of EQT.

67.     Plaintiff and the Class Members seek an Order from this Honorable Court that Defendant EQT account to and fully disclose the amount of monies that EQT held prior to EQT's purchase of the Plaintiff's and the Class Members' properties and the manner in which EQT calculated the withheld and/or suspended proceeds allocated and/or attributed to the Plaintiff and the Class Members.

## COUNT II
## CONVERSION

68.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

69.     Defendants wrongfully and intentionally deprived the Plaintiff and Class Members of the proceeds of oil and gas production.

70.     Plaintiff and the Class Members were entitled to receive their wrongfully withheld share of proceeds from oil and gas production proceeds pursuant to their ownership of the underlying mineral interests.

71.     As alleged above, Defendants knew that Plaintiff and the Class Members, as either lessors or unleased cotenants, were owed a share of EQT's production of oil and gas interests within their respective properties.

72.     Defendants intended to permanently deprive Plaintiff and the Class of owed but not yet paid proceeds by soliciting the purchase of Plaintiff's and the Class Members' mineral interests, without disclosing the existence of the proceeds Defendants knew were owed to Plaintiff and the Class Members.

73.     The proceeds are specific and readily identifiable pursuant to oil and gas production data and mineral interest ownership data that is largely in the control of Defendants.

74.     The proceeds taken by Defendants ultimately were received by Defendants as part of the coordinated conduct alleged herein.

75.     As a direct and proximate result of Defendants' wrongful conversion, Plaintiff and the Class Members have suffered and continue to suffer damages.  Plaintiff and the Class Members are entitled to recover from Defendants all damages and costs permitted, including all amount wrongfully converted, which are specific and readily identifiable.

76.     In doing the acts herein alleged, Defendants, and each of them, acted willfully, wantonly, maliciously, recklessly, and/or with callous disregard of Plaintiff's and Class Members' rights, subjecting Defendants to punitive damages according to proof at trial.

## COUNT III
## <u>FRAUD</u>

77.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

78.     Defendants, independently and acting in concert, negligently and/or fraudulently misrepresented and/or failed to disclose material facts to Plaintiff and the Class Members, which each had a duty to disclose prior to the purchase by Defendants of their mineral interests, including but not limited to:

a.     The existence of oil and/or gas production occurring on properties owned by Plaintiff and the Class Members prior to the sale of such properties;

b.     EQT's selling of oil, gas, and/or hydrocarbons extracted from properties owned by Plaintiff and the Class Members prior to the sale of such properties;

c.     The existence of proceeds owed to Plaintiff and the Class Members that EQT held in its possession or under its control;

d.     The existence of EQT's obligation to account to Plaintiff and the Class Members for their share of the proceeds of EQT's production;

e.     The existence of EQT's obligation to remit proceeds held in EQT's possession or under its control that were owed to Plaintiff and the Class Members;

f.     Other misrepresentations and/or omissions that will be shown at the trial of this matter.

79.     As detailed above, Defendants engaged, and continue to engage, in fraudulent, bad faith, false and/or deceptive practices.

80.    Defendants knew that these omissions, misrepresentations and concealments were false and misleading and that Plaintiff and the Class Members relied upon Defendants' omissions, misrepresentations and concealments to their detriment.

81.    Further, Defendants' misrepresentations, omissions, and concealments prevented Plaintiff and the Class Members from successfully effectuating the sale of their respective properties with alternative purchasers on superior terms as Defendants knew that their offered purchase price incorporated the wrongfully withheld and/or undisclosed proceeds owed to Plaintiff and the Class Members.

82.    As a direct result of Defendants' misrepresentations, omissions, and concealments, Plaintiff and the Class Members suffered general, special, consequential, incidental and compensatory damages.

83.    In doing the acts herein alleged, Defendants, and each of them, acted fraudulently, willfully, wantonly, maliciously, recklessly, and/or with callous disregard of Plaintiff's and Class Members' rights, subjecting Defendants to punitive damages according to proof at trial.

## COUNT IV
## BREACH OF FIDUCIARY DUTY

84.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

85.    At all relevant times prior to the sale of mineral interests to EQT, EQT held proceeds which were due and owing to Plaintiff and Class Members for production from their respective properties.

86.    EQT's status as an operator of Plaintiff's and Class Members' mineral interests as well as its actions in holding in its possession or under its control proceeds, monies, and/or proceeds from oil and gas production in suspense imparted upon it a fiduciary duty and other legal duties to account to Plaintiff and the Class Members for the same suspended or withheld proceeds.

87.    EQT breached its duties by providing information to Defendant BOP regarding the proceeds held in suspense without the knowledge or consent of Plaintiff and Class Members, which allowed Defendants to collaborate unlawfully in soliciting the purchase of Plaintiff's and Class Members' respective mineral interests by paying them with proceeds that they were already owed.

88.    Further, as described above, EQT breached its duties to Plaintiff and Class Members by failing to disclose the existence of and/or distribute suspended proceeds to them prior to soliciting the purchase of Plaintiff's and Class Members' properties.

89.    As a direct, proximate result of the actions herein described, Plaintiff and Class Members have suffered and continue to suffer damages. Plaintiff and the Class Members are entitled to recover from Defendants all damages and costs permitted by law.

90.    In doing the acts herein alleged, Defendants, and each of them, acted willfully, wantonly, maliciously, recklessly, and/or with callous disregard of Plaintiff's and Class Members' rights, subjecting Defendants to punitive damages according to proof at trial.


**COUNT V**
**CIVIL CONSPIRACY**

91.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

92.    Defendants have conspired and combined with each other, and with third parties, to purchase Plaintiff's and Class Members' oil and gas rights and simultaneously attempt to

extinguish the existence of the obligation to remit the proceeds of cotenant production owed to Plaintiff and Class Members.

93.     Defendants have formed and operated a civil conspiracy with each other, performing as part of the conspiracy numerous overt acts in furtherance of the common design, including one or more unlawful acts which were performed to accomplish a lawful or unlawful goal, and/or one or more lawful acts which were performed to accomplish an unlawful goal.

94.     Defendants conspired to convert Plaintiff's and Class Members' property.

95.     Defendants intended to injure, and succeeded in injuring, Plaintiff and Class Members to the extent of the cotenant production proceeds wrongfully concealed, withheld and/or converted.

96.     As a result of the conduct of Defendants and the conspiracy, Plaintiff and the Class Members have been damaged as described herein.

97.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the Class Members have suffered and continue to suffer damages. Plaintiff and the Class Members are entitled to recover from Defendants all damages and costs permitted by law.

98.     In doing the acts herein alleged, Defendants, and each of them, acted willfully, wantonly, maliciously, recklessly, and/or with callous disregard of Plaintiff's and Class Members' rights, subjecting Defendants to punitive damages according to proof at trial.

## COUNT VI
## UNJUST ENRICHMENT

99.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

100.    Defendants are liable under a theory of unjust enrichment because they unfairly received benefits from Plaintiff and Class Members to their detriment.

101.    EQT acquired mineral interests from Plaintiff and Class Members through the use of undisclosed information concerning the proceeds owed to Plaintiff and Class Members prior to purchasing their respective mineral interests.

102.    BOP conspired with EQT and also received a benefit in the form of compensation from EQT.

103.    Plaintiff and Class Members conferred benefits on Defendants, and Defendants appreciated those benefits.

104.    Defendants retained these benefits under circumstances where it would be inequitable to do so without payment of value.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and on behalf of all other members of the proposed Class, seek the following relief:

a.    An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing Plaintiff and the undersigned counsel to represent the Class, and that notice to the Class be paid by Defendants;

b.    For compensatory damages, the exact amount to be determined at trial;

c.    For general damages, consequential damages, and special damages, according to proof;

d.    For punitive damages according to proof in amount to be determined at trial and sufficient to punish Defendants and deter them and others from similar wrongful conduct;

e.    For prejudgment and post-judgment interest as permitted by law;

f.  For all other equitable relief, including disgorgement by Defendants of all sums obtained

pursuant to the unlawful conduct described herein;

g.  For such other and further relief as the Court deems just and proper.


Date: January 13, 2026                                Respectfully submitted,


_____
Phillip C. Hook (Pa. No. 324035)
Joy D. Llaguno, (Pa. No. 327120)
**HOOK & HOOK PLLC**
430 East Oakview Drive, Suite 101
Waynesburg, PA 15370
Phone: 724-824-3302
Fax:    724-638-2186
Email: phook@hooklaw.com
       jllaguno@hooklaw.com

Robert L. Redfearn, Jr. Esq.
**SIMON, PERAGINE, SMITH & REDFEARN**
1100 Poydras St. #3000
New Orleans, LA 70163
*Pending Pro Hac Vice Admission*

Joseph Scipione, Esq. (Pa. No. 210163)
**THE NITTANY GROUP, LLC**
2437 Commercial Blvd Suite 240
State College, PA 16801
Phone: 814-826-2244
*Pending Pro Hac Vice Admission*

Mark A. Kepple, Esq.
1219 Chapline Street
Wheeling, WV 26003
Phone (304)233-3100
Fax (304) 233-0201
*Pending Pro Hac Vice Admission*

*Attorneys for Plaintiff and the Putative
Class Members*

## **JURY TRIAL DEMAND**

Plaintiff, on behalf of herself and the Class, hereby demand a trial by jury in this action of all issues so triable.

Date: January 13, 2026                              Respectfully submitted,

 

_____
Phillip C. Hook (Pa. No. 324035)
Joy D. Llaguno (Pa. No. 327120)
**HOOK & HOOK PLLC**
430 East Oakview Drive, Suite 101
Waynesburg, PA 15370
Phone: 724-824-3302
Fax:    724-638-2186
Email: phook@hooklaw.com
          jllaguno@hooklaw.com